UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON


CIVIL ACTION 2:11cv159-DCR-EBA


GREGORY GOETZ,                                                    PETITIONER,

V.                              **MAGISTRATE JUDGE'S REPORT
                                AND RECOMMENDATION**

JOSEPH MEKO,
WARDEN LITTLE SANDY CORRECTIONAL COMPLEX,            RESPONDENT.


      Petitioner, Gregory Goetz (Goetz), filed herein a petition for a writ of habeas corpus

before the Court under 28 U.S.C. § 2254. [R.1].  This matter has been referred to the undersigned

for preparation of a Report and Recommendation. [R. 22].  The matter having been fully briefed,

the Court recommends that the Petitioner's writ of habeas corpus and accompanying motions be

denied.

<u>FACTUAL AND PROCEDURAL BACKGROUND</u>

      The Petitioner, Goetz was indicted by the Campbell County Kentucky grand jury for the

offenses of first degree robbery, being a persistent felony offender (PFO) in the first degree, and

first degree possession of a firearm by a convicted felon as a result of the events that took place

on July 3, 2003. [R.1].  It was on this day that Goetz entered Martin's pharmacy in Cold Spring,

Kentucky and robbed the store of its Schedule II controlled substances with the use of a

handgun. [<u>Id.</u>].

      The events preceding Petitioner's indictment and eventual conviction were summarized

by the Kentucky Supreme Court on direct appeal:

On or around July 1, 2003, Appellant's girlfriend dropped him off at a Motel 6 because his drug-induced behavior was worsening.  Appellant took with him a stockpile of drugs including cocaine, methamphetamine, heroin, OxyContin, Valium, Lortab, Tylox, and Klonopin.  Although the exact time line and quantities are unclear, Appellant testified that on the morning of July 3, 2003, he took the following drugs: 1) an Oxycontin pill, 2) his last shot (syringe full) of methamphetamine, cocaine, heroin, or some combination of the three, and 3) either one or two handfuls of Klonopin pills.

Before noon that day, Appellant's nephew visited him at the motel.  According to the nephew, while he was there Appellant took a handful of pills, behaved in a paranoid and depressed manner, and stated that he was going to borrow money from his mother.  Appellant's mother had died in 1998, five years earlier.  Appellant testified at trial that he had no memory of this visit or anything after the last handful of Klonopins that he took to help him sleep off his withdrawal.

Around 1:00 p.m. the same day, Appellant entered Martin's Pharmacy wearing sunglasses, a black baseball cap, and a dark shirt.  According to the store employees, he first walked to the back of the store, and then returned to the front of the store where the pharmacy counter was located.  The only people in the store were a student pharmacy technician and a pharmacist.  Appellant pulled a handgun, pointed it at the technician, and ordered him to get on the ground.  He told the pharmacist: "I want your C2 drugs.  I don't' want to hurt anyone, but I will, I will kill you."  The pharmacist told the Appellant that he would cooperate.  He emptied the contents of three drawers, and assured appellant that it was what he wanted.  As the pharmacist went to get a sack for the pill bottles, Appellant warned him that if he pushed a button or did anything to alert anyone, he would shoot the technician.  The pharmacist put the bottles into the sack and handed them to the Appellant.

Appellant ordered the man to the floor and warned them to stay on the floor for five minutes, and then told them that a friend was watching to make sure that they complied.  Appellant left.  Before a minute had passed, the pharmacist got up and called the police.  A passerby outside also observed Appellant leaving and called in to the police a possible robbery of Martin's pharmacy.

Officer Lester Caudill was in the area and he responded to a dispatch about the robbery.  He caught up with a car matching the reported description and called in the license plate number of the fleeing vehicle.  Dispatch reported that the vehicle was registered to the Appellant.  A high

speed chase ensued and other officers in the area assisted in the pursuit. Upon reaching a dead-end, Appellant abandoned his car and fled into some woods nearby. Police officers searched the abandoned vehicle, finding a black hat, sunglasses, a black t-shirt, pharmacy pill bottles, and an ID card bearing Appellant's name. Other officers combed the woods in search of the Appellant.

According to Appellant's testimony, it was during the police chase that his blackout ended. Appellant emerged from the woods and approached Rick Turner, who was outside flying kites with his son and nephew. Appellant was shirtless and carrying a bundle wrapped in a dark t-shirt. Appellant told Turner that he'd been in a car accident and had no insurance so he did not want to call the police. Appellant asked for a ride to Cold Springs, but Turner told him he was getting ready to take his nephew to Alexandria, and offered to take him that far.

Appellant sat in the front passenger seat and put his bundle on the floor of Turner's van. Turner noticed pill bottles, which he recognized as coming from a pharmacy, and what appeared to be the outline of a gun in Appellant's rolled-up t-shirt. Earlier in the day, Turner had noticed some police activity, including a helicopter search, along another part of the highway. Turner asked Appellant if he was the one the police were looking for. Appellant denied it. Appellant used Turner's cell phone, and told the person he called to pick him up at "my brother's," then asked Turner to drop him off at Goetz Auto Sales (which was owned by Appellant's brother. As soon as Appellant exited the car, Turner called 911 and told the operator that he had just dropped off a man at Goetz Auto Sales who appeared to have pill bottles and a gun.

Officers were dispatched to Goetz Auto Sales in Alexandria, where they apprehended Appellant with a paper bag of pill bottles and a gun still in his hands. At trial, both the pharmacist and the technician identified Appellant as the person who robbed the pharmacy.

The charges against the Appellant were tried from October 25-26, 2006. The trial court was faced, *in limine*, with the prosecution's motion to exclude evidence that the defendant's drug problem authorized any form of legal defense based on insanity. The Commonwealth cited this Court's opinion Lickliter v. Commonwealth, which stated that drug addiction, by itself, is not a disease constituting or leading to "mental illness" so as to afford a defense to a criminal charge. 142 S.W.3d 55 68-69 (Ky. 2004).

The trial court granted the motion at a hearing before trial. Trial counsel requested clarification of the court's ruling, specifically asking whether he

> could present evidence regarding the effect the narcotics had on the
> Appellant.  The trial judge stated that the defense could bring a doctor in
> to testify as to the effect of the drugs, but that attorneys and witnesses
> were prohibited from offering any testimony or comment that Appellant's
> drug abuse problem amounted to any form of legal defense based on
> insanity.

Goetz v. Commonwealth, No. 2004-001002-MR 2007 WL 3224537, at *1-3 (Ky. 2007).   These

are the facts as accepted by the Kentucky Supreme Court, and given that Goetz does not

challenge these facts this Court accepts them as true. "If the petitioner does not quarrel with the

actual summary of the facts then the federal court may use the state court summary."  Clark v.

Waller, 490 F.3d 551, 556 (6th Cir. 2007).

The jury found Goetz guilty of robbery in the first degree, and the jury recommended a

sentence of 20 years imprisonment. [R. 1 at 22].  The jury also found Goetz guilty of being a

Persistent Felony Offender in the First degree and enhanced his 20 year sentence to a 50 year

sentence. [Id.].

Goetz brought a direct appeal to the Kentucky Supreme Court alleging that the trial court

erred by: (1) excluding evidence that his drug addiction affected his ability to conform his

conduct to the law; (2) denying his request for an insanity defense instruction; (3) failing to

instruct the jury on the defense of intoxication and the lesser included offense of second degree

wanton endangerment (which was an unpreserved error); and (4) denying his pro se motion to

dismiss his attorney. [Id. at 22-23].  The Kentucky Supreme Court affirmed Goetz's conviction

and sentence on November 1, 2007.  [Id.].

On September 17, 2008, Goetz filed a motion to vacate his conviction and sentence

pursuant to Kentucky Rule of Criminal Procedure, Rule 11.42.  Goetz's allegation was that his

court appointed counsel rendered ineffective assistance by: (1) failing to request a voluntary

intoxication and wanton endangerment instruction after presenting a defense of voluntary intoxication; (2) failing to advise Goetz that his status as a convicted felon would be revealed if he testified at trial; (3) failing to properly prepare witnesses in advance of trial; and (4) failing to present any mitigating evidence at sentencing. [Id. 23-24].  The Campbell Circuit Court held an evidentiary hearing on these allegations, but ultimately denied Goetz's motion. [Id.] Goetz pursued an appeal of the Campbell Circuit Court's decision. [Id.].  The Kentucky Court of Appeals affirmed the denial of Goetz's 11.42 motion finding that he suffered no prejudice as a result of the alleged deficiencies in his attorney's performance.

On August 15, 2011, Goetz filed a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that his court appointed counsel rendered ineffective assistance by: (1) failing to request a voluntary intoxication and wanton endangerment instruction after presenting a defense of voluntary intoxication; (2) failing to advise Goetz that his status as a convicted felon would be revealed if he testified at trial; (3) failing to properly prepare witnesses in advance of trial; and (4) failing to present any mitigating evidence at sentencing. [Id.].  In addition to the ineffective assistance of counsel claims, Goetz raises three additional grounds for relief claiming that his Constitutional rights were violated when: (1) the state court excluded evidence that his drug addiction affected his ability to conform his conduct to law;  (2) the state court refused to issue a jury instruction on an insanity defense; and (3) the state court denied a *pro se* motion to have his court appointed attorney dismissed. [Id. at 46-55].

STANDARD OF REVIEW

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996(AEDPA), an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d).

A federal court may then grant a writ of habeas corpus under two different clauses. Under the "contrary to" clause, a federal court may grant habeas relief if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000); White v. Mitchell, 431 F.3d 517, 523 (6th Cir. 2005); Jones v. Jamrog, 414 F.3d 585, 591 (6th Cir. 2005). Furthermore, the words "contrary to" should be construed to mean "diametrically different, opposite in character or nature, or mutually opposed." Williams, 529 U.S. at 405.

In addition, under the "unreasonable application" clause, a federal court may grant habeas relief if the state court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle to the facts. Williams, 529 U.S. at 407-08. However, if the state court decision applied clearly established federal law erroneously or incorrectly that is not grounds for habeas relief. Williams, 529 U.S. at 411. The application

must be unreasonable.  Id.   Relief is also available under this clause if the state court decision either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context.  Williams, 529 U.S. at 407; Arnett v. Jackson, 393 F.3d 681, 686 (6th Cir. 2004).  The question for the "unreasonable application" analysis is whether the state court decision was "objectively unreasonable" and not simply erroneous or incorrect.  Williams, 529 U.S. at 409-11; Lordi v. Ishee, 384 F.3d 189, 195 (6th Cir. 2004).

In conducting habeas corpus review of state court convictions, a federal court is limited to deciding whether a conviction violates the Constitution, laws, or treaties of the United States. Estelle v. McGuire, 502 U.S. 62, 68 (1991).  "Federal habeas corpus relief does not lie for errors of state law....[and] it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Id. at 67-68.  Accordingly, the proper inquiry herein is whether the alleged errors violated the Petitioner's federal rights.  Id.

Ultimately, AEDPA's highly deferential standard requires that this court give the state-court decision "the benefit of the doubt." Slagle v. Bagley, 457 F.3d 501, 514 (6th Cir. 2006).  A federal habeas court must give complete deference to evidence-supported state court findings of fact pursuant to the presumption of correctness now found in 28 U.S.C. § 2254(e)(1).  Sumner v. Mata, 455 U.S. 591, 597 (1982).

<u>EXHAUSTION OF STATE REMEDIES</u>

Subject to a one-year statute of limitations, 28 U.S.C. § 2244(d)(1), state prisoners may seek federal habeas corpus relief on the ground that they are being held in custody in violation of the Constitution, law or treaties of the United States.  Reed v. Farley, 512 U.S. 339, 347 (1994). Ordinarily, state prisoners must first exhaust their available state court remedies by fairly

presenting all their claims to the state courts before seeking habeas relief.  28 U.S.C. § 2254(b), (c); Rhines v. Weber, 544 U.S. 269, 274 (2005).

Normally, the exhaustion requirement is satisfied after a petitioner fairly presents all claims to the highest court in the state of conviction, thus giving the state a full and fair opportunity to rule on a petitioner's claims before seeking relief in federal court.  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Dietz v. Money, 391 F.3d 804, 808 (6th Cir. 2004).  The exhaustion principle requires a state prisoner to invoke one full round of the state's established review procedures.  O'Sullivan, 526 U.S. at 842. The petitioner bears the burden of proving that he has exhausted all state court remedies before bringing a 28 U.S.C. § 2254 habeas corpus action.  Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994).

In Goetz's case he has fully exhausted all state remedies as is required.  With regard to his first four grounds in this action, all of which are ineffective assistance of counsel claims, Goetz appealed the trial court ruling on his 11.42 motion to the Kentucky Court of Appeals after which the Kentucky Supreme Court denied discretionary review. [R. 1 at 2].  The remaining three claims were raised in a direct appeal to the Kentucky Supreme Court, and therefore all claims were completely exhausted. [Id.].

<u>INEFFECTIVE ASSISTANCE OF COUNSEL</u>

After Goetz's trial in the Campbell County Circuit Court, he filed an RCr 11.42 motion with the trial court.  Goetz argued that trial counsel provided ineffective assistance of counsel by (1) failing to request jury instructions on voluntary intoxication and wanton endangerment; (2) failing to advise Goetz that his status as a convicted felon would be revealed if he testified at trial; (3) failing to prevent the disclosure of his criminal history through the defense witnesses;

8

and (4) failing to present mitigating evidence during the penalty phase of his trial.  Goetz v. Commonwealth, 2001 WL 1196672 (Ky. 2011).  After conducting a hearing on the matter, the trial court denied Goetz's RCr 11.42 motion.  Id.  The trial court found that while counsel may have acted ineffectively, Goetz was not in any way prejudiced by his counsel's choices.  Id.  Goetz then appealed this denial of his RCr 11.42 claims to the Kentucky Court of Appeals, which upheld the trial court and found that his counsel's assistance was effective.  Id.

The Supreme Court of the United States presently holds that in order for a defendant to have his/her conviction overturned based upon ineffective assistance of counsel two elements must be satisfied: (1) the defendant must show that counsel's performance was so defective that he/she was not functioning as counsel as guaranteed under the 6th Amendment; and, (2) the defendant must show that prejudice resulted from the defective performance.  Strickland v. Washington, 466 U.S. 668, 688 (1984). The performance inquiry focuses on whether counsel's assistance was reasonable considering all the circumstances.  Id.

However, an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no affect on the judgement.  Id. at 691.  The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding.  Id. at 692.  Accordingly, any deficiencies in counsel's performance must be prejudicial to the defendant in order to constitute ineffective assistance.  Id.  To establish prejudice, the defendant must show there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.  Id. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  Id.  Essentially, the benchmark

for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.  Id. at 686.

Under AEDPA, a state court's ruling on an ineffective assistance of counsel claim presented below must be an unreasonable application of the Strickland standard in order to justify federal habeas relief.  Bell v. Cone, 535 U.S. 685, 693-94 (2002); Scott v. Elo, 302 F.3d 598, 606-07 (6th Cir. 2002); Mongo v. Edwards, 281 F.3d 568, 582-83 (6th Cir. 2002).  When analyzing an ineffective assistance of counsel claim on habeas review, the appellate court considers "the totality of the evidence both adduced at trial, and the evidence adduced in the habeas proceeding." Towns v. Smith, 395 F.3d 251, 257 (6th Cir. 2005) (quoting Wiggins v. Smith, 539 U.S. 510, 536 (2003)).  The reviewing court's scrutiny of counsel's performance is highly deferential, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  Strickland, 466 U.S. at 690.  Therefore, Goetz has a very high threshold to satisfy in order to obtain relief based upon his ineffective assistance of counsel claims.

<u>GROUND ONE: COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO REQUEST A JURY INSTRUCTION ON VOLUNTARY INTOXICATION AND LESSER INCLUDED OFFENSE OF WANTON ENDANGERMENT</u>

Goetz's first argument is that his counsel rendered ineffective assistance by failing to request a jury instruction on voluntary intoxication and the lesser included offense of wanton endangerment. [R.1 at 28].  Goetz claims that prior to his trial, the only evidence developed by his counsel was designed to attack the intent element of the crime of robbery. [Id.].  Furthermore, Goetz makes the assertion that his counsel was aware that he had a serious drug addiction and

10

that he had been on a three day "bender" prior to the robbery. [Id.].  According to Goetz, his counsel was even aware of an evaluation performed by the Kentucky Psychiatric Center (KCPC) regarding his competency to stand trial. [Id. at 21].  Dr. Steven Simon testified during a competency hearing held on February 13, 2004, that while Goetz was competent to stand trial, due to the substance abuse he would have been unable to conform his conduct to the law at the time of the offense. [Id.].

Goetz claims that going into trial his counsel's strategy was to present an insanity defense, but this defense was eliminated through a pretrial suppression motion ruling. [Id. at 28-29].  Therefore, counsel proceeded with the theory that Goetz's voluntary intoxication resulting from his drug addiction mitigated or negated the element of intent. [Id. at 29].  Goetz asserts that all of the evidence presented by his counsel at trial was aimed at showing that he was intoxicated and therefore could not form the requisite intent to commit first degree robbery. [Id.].  Despite having presented all of this supporting evidence, counsel did not request a jury instruction on the matter of voluntary intoxication. [Id.].  Goetz also argues that his counsel was ineffective for not requesting that the jury be instructed on the lesser included offense of wanton endangerment. [Id.].

KRS 501.080 provides that intoxication can be a defense to a criminal charge if that condition negates the existence of an element of the offense.  An intoxication instruction is only necessary when the intoxication was so great that the evidence indicates the defendant did not know what he was doing in committing the crimes.  On his RCr 11.42 appeal to the Kentucky Court of Appeals, that court ruled that Goetz was entitled to an instruction on voluntary intoxication.  Goetz v. Commonwealth, No. 2009-CA-001941-MR,  2011 WL 1196672 at *3

(Ky. Ct. App. 2011).  If Goetz had requested such an instruction then it would have allowed the jury to consider whether he acted under a reduced mental state of wantonness or recklessness and thus reduced the possible sentence that he faced.  Id.  However, the Kentucky Court of Appeals agreed with the trial court that counsel was not ineffective in pursuing acquittal on the charge of First Degree Robbery, rather than a lower sentence resulting from conviction on a lesser included offense. Id.  The Kentucy Court of Appeals reasoned that the decision to seek an acquittal by arguing that Goetz was unable to form the requisite intent due to being too mentally ill, and not just voluntarily intoxicated, was in fact reasonable trial strategy.  The trial court's finding that counsel was not ineffective was affirmed by the Kentucky Court of Appeals.  Id.

This Court reviews the decision of the Kentucky Court of Appeals under the discretionary standard called for under 28 U.S.C. § 2254(d).  In making its decision the Kentucky Court of Appeals relied on the application of the test set-forth in Strickland, which looks to see if (1) there was a deficiency in counsel's performance; and (2) if that deficiency was so prejudicial that the proceeding was fundamentally unfair and the results unreliable. Strickland, 466 U.S. at 668.  The Kentucky Court of Appeals found that the trial court did not abuse its discretion when it applied this standard and determined that counsel's choice of refraining from asking for certain jury instructions and instead seeking an acquittal was a reasonable trial strategy.  Goetz, 2011 WL 1196672 at *4.

This Court finds that the decision of the Kentucky Court of Appeals reasonably applied federal law, in that the choice to forego an instruction on voluntary intoxication or any lesser included offense in favor of an acquittal was reasonable trial strategy.  There is evidence in the record that at the evidentiary hearing Goetz's counsel in fact stated that it was his strategy to "go

12

for broke." [R. 9 at 274; referencing Tr. Tape 1 at 14:16].  Given that the Kentucky Court of

Appeals applied the Strickland standard, and the result and reasoning are consistent with

Supreme Court precedent this Court finds the state court reasonably applied federal law.  Slagle

v. Bagley, 457 F.3d 501, 513 (6th Cir. 2006).  Ultimately, Goetz failed to provide the Court with

any evidence to the contrary and the highly deferential standard established by the AEDPA

allows this Court to give the state-court decision the benefit of the doubt.  Slagle, 457 F.3d at

514; (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

MOTION TO EXPAND THE RECORD

Goetz filed a motion to expand the record to include recordings of an evidentiary hearing

held in the state trial court concerning his RCr 11.42 motion to vacate. [R.11].  Goetz claims that

there is no record of the actual trial or evidentiary hearing for his RCr 11.42 motion, and he feels

that it is essential for the Court to have this tape available for review of his claim regarding

counsel's failure to request a jury instruction. [Id.].  Goetz claims that at the evidentiary hearing

his counsel admitted he could not recall having a strategy and that a copy of this evidentiary

hearing is crucial to making a decision regarding this portion of his claim. [Id.].

However, in the record there is evidence from the evidentiary hearing where Goetz's

counsel testified that he chose to "go for broke" and seek an acquittal by attacking the intent

element of First Degree Robbery. [R. 9 at 274; referencing Tr. Tape 1 at 14:16].  Goetz argues

that the failure to request an instruction on voluntarily intoxication or a lesser included offense

was ineffective assistance of counsel rather than trial strategy, and he claims that a recording of

the evidentiary hearing will establish that.  However, the Kentucky Court of Appeals affirmed

the decision of the trial court and determined that Goetz did not receive ineffective assistance of

13

counsel. <u>Goetz</u>, WL 1196672 at *3.

Rule 28 U.S.C. § 2254(7), allows a judge to expand the record in order to circumvent the time and expense that is required for an evidentiary hearing.  <u>Raines v. United States</u>, 423 F.2d 526, 529-530 (4th Cir. 1970).  Furthermore, unless it is clear from the pleadings and the files that the petitioner is entitled to no relief, the statute may make a hearing mandatory.  <u>Id.</u>  Given that Goetz does not challenge the factual findings of the state court, there is a presumption of correctness that this Court must honor.  Findings of historical facts and determinations of the credibility of witnesses made by the state courts are presumed correct under 28 U.S.C. § 2254(d).  Seeing as Goetz has provided the Court with no evidence to the contrary, this Court will accept as true the fact that Goetz's counsel testified at the evidentiary hearing that choosing not to instruct the jury on voluntary intoxication was his trial strategy.  Therefore, this Court denies Goetz's motion to expand the record as it finds the Kentucky Court of Appeals did not abuse its discretion in determining that the record was sufficient.

<u>GROUND TWO: COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO ADVISE PETITIONER THAT HIS STATUS AS A CONVICTED FELON WOULD COME OUT IF PETITIONER TESTIFIED AT TRIAL</u>

Goetz's second argument is that his counsel rendered ineffective assistance by failing to advise him that his status as a convicted felon would come out if he testified in his own defense at trial. [R.1 at 36].  Goetz did in fact choose to testify in his own defense at trial. [<u>Id.</u>].  It was during the state's cross-examination, that Goetz was asked if he was a convicted felon. [<u>Id.</u>].  Goetz claims that he was surprised by the question because his counsel did not provide him with a warning that his status as a convicted felon was a legitimate subject for cross-examination by a prosecutor in the state of Kentucky. [<u>Id.</u>].  Upon being asked this question Goetz asked the court

14

if he might be allowed to confer with his counsel before answering. [Id.].  In a bench conference, Goetz's counsel admitted to the court that he "didn't think to tell [Goetz] he has to answer yes to that question." [Id.].

In addressing this argument the Kentucky Court of Appeals noted that a defendant's right to testify on his own behalf must necessarily be balanced against the defendant's Fifth Amendment rights to avoid self-incrimination.  Goetz, 2011 WL 1196672 at *7; Crawley v. Commonwealth, 107 S.W.3d 197, 199 (Ky. 2003).  Furthermore, when a defendant decides to testify in his own defense, he subjects himself to the rigors of cross-examination and must answer all questions relevant to the prosecution of the case.  Goetz, 2011 WL 1196672 at *7; Dillman v. Commonwealth, 257 S.W.3d 126, 128 (Ky. Ct. App. 2008).  Thus the Kentucky Court of Appeals agreed that Goetz had a constitutional right not to incriminate himself, and as with any right one must know about it in order to waive it.  Goetz, 2011 WL 1196672 at *7.

The Kentucky Court of Appeals agreed that counsel has a duty to advise a client of his/her constitutional rights and any trial strategies that may compromise those rights.  Id.  The state court agreed that trial counsel was deficient in not adequately preparing Goetz to take the stand in light of his criminal history.  Id.  However, the Kentucky Court of Appeals also agreed with the trial court that this did not result in any actual prejudice to Goetz as the jury was admonished to disregard any testimony regarding prior convictions when considering guilt or innocence.  Id.  The Kentucky Court of Appeals reasoned that the admonition given to the jury afterwards prevented Goetz from suffering any prejudice.  They held that a jury is presumed to follow an admonition to disregard evidence and the admonition thus cures any error.  Id.; Johnson v. Commonwealth, 105 S.W.3d 430, 441 (Ky. 2003).  For these reasons the Kentucky

Court of Appeals determined that Goetz was not entitled to relief under his second claim of ineffective assistance of counsel.

Counsel has the duty to inform his client of his constitutional rights and any effect that trial strategy may have on those rights, but this Court finds it reasonable that under the Strickland standard no actual prejudice was suffered by Goetz.  The Supreme Court has held that a well-designed admonition to the jury is sufficient to correct any prejudicial effects of testimony or statements made in the presence of the jury.  Singer v. U.S., 380 U.S. 24, 38 (1965). Therefore, this claim fails the second prong of the Strickland standard.   This Court finds it a reasonable application of federal law that the Kentucky Court of Appeals held that Goetz is not entitled to relief under his second claim of ineffective assistance of counsel.

## GROUND THREE: COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO PREPARE PETITIONER'S WITNESSES IN ADVANCE OF TRIAL

Goetz's third argument is that his counsel rendered ineffective assistance by failing to properly prepare witnesses in advance of trial. [R. 1 at 40].  Counsel called as witnesses Goetz's girlfriend and nephew to testify about his condition prior to the robbery. [Id.].  During the testimony of these two witnesses information was provided to the jury that Goetz had a history of being in and out of prison throughout his life and that he was a convicted felon. [Id.].  Goetz claims that this is information that would not have been revealed had his counsel properly prepared these witnesses. [Id.].

The trial court found that even if trial counsel was deficient in failing to prepare the witnesses, Goetz suffered no actual prejudice from these inadvertent statements.  Goetz, 2011 WL 1196672 at * 7.  The Kentucky Court of Appeals affirmed the trial courts decision as the

16

statements were "fleeting" and cured by the previously discussed jury admonition.  Id.  For this reason, the Kentucky Court of Appeals determined that Goetz was not entitled to relief under his third ineffective assistance of counsel claim.  Id.

The Kentucky Court of Appeals held that no actual prejudice was suffered by Goetz as these facts had already been established through his own testimony and that the previously discussed admonition cured any error that might have been suffered by the "fleeting" statements. Goetz, WL 1196672 at *7 (citing Johnson v. Commonwealth, 105 S.W.3d 430, 441 (Ky. 2003)). Given that the state court applied the Strickland standard with regard to ineffective assistance of counsel, and that the Supreme Court has found that admonitions can cure prejudicial errors this Court finds the state court decision to be  reasonable.  Singer, 380 U.S. at 38; Slagle, 457 F.3d at 514 (stating that federal courts must uphold state court decisions that are consistent with Supreme Court precedent).  Therefore, this Court finds that the Kentucky Court of Appeals reasonably applied federal law when it determined that Goetz was not entitled to relief under his third claim of ineffective assistance of counsel.

<u>GROUND FOUR: COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO PRESENT MITIGATING EVIDENCE DURING THE SENTENCING PHASE OF TRIAL</u>

Goetz's fourth argument is that his counsel rendered ineffective assistance by failing to present mitigating evidence during the sentencing phase of his trial. [R.1 at 43].  Goetz claims that a criminal defense attorney has a duty to investigate and if appropriate present mitigating evidence at the sentencing phase of trial. Id.; Wiggins v. Smith, 539 U.S. 510, 523-38 (2003). Goetz further claims that if an attorney does not perform any investigation in preparation for the sentencing phase of trial, the attorney's performance is deficient and cannot be classified as trial

strategy or tactic. <u>Id.</u> (citing <u>Austin v. Bell</u>, 126 F.3d 843, 844 (6th Cir. 1997)).

Goetz's counsel presented no evidence during the sentencing phase of trial. [<u>Id.</u>].  Goetz claims that the only thing his counsel did for him was make a terse request for the jury to understand how he was laid low by drug addiction during the closing argument. [<u>Id.</u>].  Goetz makes the argument that the problem in this situation is that given the evidence and deficient performance of his counsel it was highly probable that he was going to be facing the maximum sentence.  [<u>Id.</u>].  Therefore, it would have been reasonable to expect counsel to investigate and prepare in anticipation of the sentencing phase of trial. [<u>Id.</u> at 45].  Goetz, however, feels that his attorney did no investigation prior to the sentencing phase and was therefore unprepared. [<u>Id.</u>].

Goetz claims that there was a great deal of evidence to "humanize" him. [<u>Id.</u>].  He had family and friends that were available to testify as to his hardships and struggles in life, but none of this evidence was ever presented. [<u>Id.</u>].  Furthermore, Goetz's counsel had in his file the KCPC competency report reflecting his inability to conform his conduct to the confines of law due to his drug and alcohol addiction. [<u>Id.</u>].  None of this evidence was ever presented during the sentencing phase and Goetz argues that had it been presented it could have had an affect upon the sentence he ultimately received. [<u>Id.</u>].

The Kentucky Court of Appeals affirmed the trial court's decision and made the determination that Goetz's counsel was not ineffective given trial counsel's appeal to the jury to understand the ravages of drug addiction.  <u>Goetz</u>, 2001 WL 1196672 at *7.  The court found that a vague allegation that counsel failed to investigate without offering any specific facts to support that allegation or what such an investigation might reveal was insufficient to support an RCr 11.42 motion.  <u>Id.</u>  Furthermore, the state court previously found that Goetz's counsel: (1)

18

presented evidence of his drug addiction at trial and urged the jury during the penalty phase to understand the ravages of drug addiction; and, (2) that Goetz failed to provide his counsel with any witnesses to testify to any additional mitigating evidence.  Id.  Therefore, given that Goetz failed to provide his counsel with any further evidence that had not already been presented the state court determined there was insufficient grounds for an ineffective assistance claim.  Id. (citing Sanders v. Commonwealth, 89 S.W.3d 380, 390 (Ky. 2002)).

The state court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them.  Slagle, 457 F.3d at 513.  Instead, it is sufficient that the result and reasoning are consistent with Supreme Court precedent.  Id. at 514.  Therefore, given that Goetz failed to provide his counsel with any evidence that had not already been presented, there does not appear to be a basis for an actionable claim.  Thus, this Court finds it a reasonable application of federal law that Goetz was not provided ineffective assistance of counsel given trial counsel's appeal to the jury to understand the ravages of drug addiction during the penalty phase.

GROUND FIVE: THE PETITIONER'S RIGHTS TO PRESENT A DEFENSE WAS VIOLATED WHEN THE STATE COURT EXCLUDED EVIDENCE THAT HIS DRUG ADDICTION AFFECTED HIS ABILITY TO CONFORM HIS CONDUCT TO THE LAW

Goetz's fifth argument is that his Constitutional rights were violated when the state court excluded evidence that his drug addiction affected his ability to conform his conduct to the law. [R.1 at 46].  Goetz argues that the United States Constitution guarantees "a meaningful opportunity to present a complete defense." Id. (citing Crane v. Kentucky, 476 U.S. 683, 690 (1986)).  Goetz claims that because he was not allowed to present the testimony of a psychologist as to the effects of his drug addiction on his ability to conform his actions to the

law, he was not allowed the opportunity to present a complete defense. [Id.].

The defense that Goetz's counsel wanted to present was an insanity defense designed to attack the intent element of the robbery charge. [Id.].  Goetz filed a *pro se* notice of his intent to rely on the insanity defense as is required by the Kentucky Rules of Criminal Procedure. [Id.]. Goetz also had Dr. Connor, a psychologist who had evaluated him, prepared to testify how Goetz's drug addiction impaired his ability to conform his conduct to law. [Id.].  Dr. Connor was prepared to testify that Goetz was "quite impaired due to paranoia, being extremely under the influence of various drugs, depression, and the void of (withdrawal from) such substances." [Id. at 48].  Dr. Connor's conclusion was that at the time in question Goetz was at the point physically and psychologically where he could no longer make choices based on sound reasoning because the urge he experienced was too strong. [Id.].  However, this testimony was never heard by the jury as prior to trial the prosecution moved to suppress any evidence by the defense that Goetz's drug addiction was a mental illness or that it in any way negated his ability to conform his actions to law. [Id.].  This motion was granted and Dr. Connor was only allowed to testify at trial about Goetz's clinical and social history regarding his drug addiction. [Id.]. Goetz was not permitted to present any of Dr. Connor's testimony regarding the effect that his drug dependency had on his ability to conform his conduct to the confines of the law.  Given that Goetz was not permitted to present this evidence to the jury,  he argues that he was not allowed to present a complete defense and therefore his constitutional rights were violated. [Id. at 46].

Goetz presented the argument to the Kentucky Supreme Court, that this testimony would have put his addiction into context for the jury and raised doubts concerning the voluntariness of his actions.  Goetz, 2007 WL 3225437 at * 4.  The lower court reasoned that a defendant's right

to present relevant evidence is not unlimited, but is subject to reasonable restrictions.  Id.  The exclusion of evidence is only considered arbitrary or disproportionate when the interest of the defendant infringed upon is weighty. Id.  The trial court concluded that the expert testimony Goetz wanted to produce as to his mental state at the time of the crime was not relevant, given the Kentucky Supreme Courts ruling that addiction alone is not a mental condition.  Id.

The Kentucky Supreme Court held that while it was unsure whether or not it was necessary to exclude the evidence, it did not think that it was arbitrary or disproportionate as Goetz was able to produce other evidence to support his defense. Id.  Even if the evidence was relevant, the right to introduce relevant evidence may be curtailed if there is a good reason for doing so, such as when its probative value is outweighed by the danger of prejudice or confusion of issues.  Id.  Therefore, the Kentucky Supreme Court could not say that the trial court abused its discretion in the exclusion of the evidence at issue.  Id.

The Kentucky Supreme Court held that Goetz was not denied the right to present evidence in his defense by the trial court's ruling.  Id.  Goetz was given the opportunity to develop his defense through his own testimony, the testimony of his cousin and girlfriend, and even the testimony of Dr. Connor as to the effects of drugs's on a persons behavior.  Id.  The Kentucky Supreme Court noted that Goetz's situation was distinguishable from the cases in which he relied in that those cases turned on the fact that the defendant was prevented from introducing any evidence in his/her defense.  Id. at 5.  In the line of cases Goetz relied upon,  the court completely excluded evidence as to the circumstances under which the defendant's confession was obtained, preventing his attempt to challenge its credibility at trial.  Id. (citing Crane v. Commonwealth, 476 U.S. 683, 690-91 (1986)).  The Kentucky Supreme Court found

that Goetz had not shown any "wholesale exclusion" that violated his right to present a defense.
Id.

The Kentucky Supreme Court held that Goetz was allowed to present a defense; although not in the way that he wanted, by using particular language from the expert.  Id.  Furthermore, the jury was fully aware of Goetz's defense of chronic drug addiction, lack of memory or knowledge of what happened, and lack of control over his actions.  Thus, the Kentucky Supreme Court found that there was no error in the trial court's ruling.  Id.

Under AEDPA, this Court may grant habeas corpus relief if the adjudication of the claim in state court resulted in a decision that was contrary to or an unreasonable application of clearly established federal law.  Estelle, 502 U.S. at 68; 28 U.S.C. § 2254(d)(1).  States have substantial latitude under the Constitution to define rules for the exclusion of evidence and to apply those rules to criminal defendants.  Clark v. Arizona, 548 U.S. 735, 789 (2006); United States v. Scheffer, 523 U.S. 303, 308 (1998).  This authority, however, has constitutional limits which guarantee criminal defendants a meaningful opportunity to present a complete defense.  Id.  In Clark, the Supreme Court held that the Confrontation Clause would be violated if the defendant were prevented from presenting all testimony.  Id.  But, if there is only an exclusion of a certain line of testimony then there is no violation.  Id.

The Kentucky Supreme Court held that simply because Goetz was not given the opportunity to present the full testimony of Dr. Connor does not mean that he was not afforded the chance to present a full-defense.  The state court determined that there was no "wholesale exclusion" of a defense theory, only a certain line of questioning.  Therefore, this Court finds that the Kentucky Supreme Court's decision was a reasonable application of  federal precedent.

## GROUND SIX: PETITIONER WAS PREJUDICED BY THE TRIAL COURT'S REFUSAL TO ALLOW A JURY INSTRUCTION ON AN INSANITY DEFENSE

Goetz's sixth argument is that he was prejudiced by the trial court's refusal to issue a jury instruction on an insanity defense. [R.1 at 52]. Goetz claims that he presented ample evidence to demonstrate that he suffered from a serious form of mental psychosis as a result of his life long drug abuse. [Id].

Goetz recognizes the fact that in the state of Kentucky courts have upheld the refusal to give an insanity defense on the grounds that insanity requires more than a showing of mere drug addiction. [Id.]. Goetz refers to KRS 504.060(5) which provides that: "Insanity means as a result of mental condition, lack of substantial capacity either to appreciate the criminality of one's conduct or to conform one's conduct to the requirements of law." [R.1 at 52]. It has also been held, that the "mental condition" that is referred to in this particular statute refers to mental illness or mental retardation and drug addiction alone does not amount to mental illness. Commonwealth v. Tate, 893 S.W.2d 368, 372 (Ky. 1995).

In his direct appeal to the Kentucky Supreme Court, Goetz argued that the trial court's denial of an instruction on the defense of insanity was in error. Goetz, 2007 WL 3225437 at *5. Goetz pointed to the testimony from his girlfriend, his nephew, and himself, all of which detailed his extreme drug addiction and the effects it had upon his mental state. Id. Goetz contends that given all of the available evidence the defense of insanity was available. Id.

The Lickliter case is the leading case out of Kentucky on this issue. Lickliter v. Commonwealth, 142 S.W.3d 65 (Ky.2004). In Lickliter, the Kentucky Supreme Court held that drug addiction, by itself, is not a disease constituting or leading to "mental illness" so as to

afford a defense to a criminal charge.  Id. at 68-69.  Goetz argued that Lickliter was distinguishable because in that case the defendant merely asserted that he was acting under the influence of drugs, and that there was no evidence of mental illness.  Goetz, WL 3225437 at *5 (citing Lickliter, 142 S.W. 3d at 68).  Goetz argued, on the other hand, that he provided ample evidence of his mental state at the time of the robbery, and presented evidence of mental illness. Id.  Goetz stated that he provided more than a "mere showing of narcotics addiction."  Id.  Goetz pointed to the language in Lickliter, that a mere showing of narcotics addiction without more, does not constitute some evidence of mental illness or retardation so as to raise the issue of criminal responsibility.  Id.  Goetz maintained that he provided evidence of mental symptoms such as paranoia and psychosis, and demonstrated that he was experiencing them just before the time of the offense.  Id.

The Kentucky Supreme Court reasoned that the evidence in this case was insufficient to distinguish it from the Lickliter line of cases.  Id. at 6.  Lickliter cited the definition in KRS 504.060(5), which states that insanity means that "as a result of mental condition, lack of substantial capacity either to appreciate the criminality of one's conduct or to conform one's conduct to the requirements of law."  Id.  The "mental condition" must be a mental illness or mental retardation, drug addiction by itself does not qualify.  Lickliter, 142 S.W.3d at 68; Tate, 893 S.W.2d at 368..  The Kentucky Supreme Court held that it must be proven that the addiction amounted to or caused mental illness, which requires more of a showing than merely the mental effects of drug use.  Id.

In accordance with this precedent, the Kentucky Supreme Court determined that the trial court did not abuse its discretion when it found that Goetz did not have a mental illness or

retardation to justify an insanity instruction under Kentucky law.  Id.  The Kentucky Supreme Court applied the language of Lickliter, and held Goetz to the standard of having to prove that he had some other mental condition other than the side effects of drug withdrawal.  Id.  The Kentucky Supreme Court found that Goetz's evidence fell short of showing the required  mental condition or illness and thus there was no error in the trial court's denial of an instruction on insanity.  Id.

The Kentucky Supreme Court made the determination that according to the standards it set-forth that Goetz was not "mentally ill," and therefore was not entitled to a jury instruction of insanity as a defense.  Based upon this determination this is a claim involving an evidentiary issue, and must be left to the state court.  This is not an issue that can be properly brought to this Court under a 28 U.S.C. § 2254 habeas appeal, as the real issue is whether the evidence presented by Goetz was sufficient to show that he had a mental illness.  This is an issue that should be addressed through a state evidentiary hearing as it does not involve a question of federal law.  Under AEDPA, a federal court may grant a writ of habeas corpus if the adjudication of the state claim resulted in (1) an unreasonable application of clearly established federal law ; or (2) if the decision was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  Goetz's claim satisfies neither of these elements.

The Kentucky Supreme Court used an abuse of discretion standard when evaluating the decision of the trial court.  Id,  In making an independent appraisal of the habeas petitioner's constitutional claim, a federal district court must sometimes defer to a state court's resolution of "issues of fact" underlying its determination.  White v. Estelle, 459 U.S. 1118, 1122 (1983).  The real issue underlying Goetz's claim in this situation is one of an evidentiary nature, and not a

question of a violation of constitutional rights. Federal habeas relief does not lie for errors of state law. . .[and] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions. Estelle, 502 U.S. at 68. Habeas relief is available only to decide if a state court conviction violates a petitioner's federal rights, unless there is an unreasonable application of federal law. Id.

Therefore, it is not an appropriate ground for relief to be brought before this Court. Id. It is for this reason that this Court relies on the Kentucky Supreme Court's finding that the trial court was not in error when it determined that Goetz was not entitled to a jury instruction on an insanity defense.

### GROUND SEVEN: THE PETITIONER WAS PREJUDICED BY THE STATE COURT'S DENIAL OF PETITIONER'S PRO SE MOTION TO HAVE HIS COURT APPOINTED ATTORNEY DISMISSED

Goetz's seventh and final argument is that he was prejudiced by the state court's denial of his *pro se* motion to have his court appointed attorney dismissed. [R.1 at 55]. On June 9, 2004, four months before the start of his trial, Goetz sent a letter to the Circuit Court Clerk's office seeking to have his court appointed attorney, Theodore Knoebler, removed. [Id.]. Goetz was seeking the appointment of another attorney, he was not attempting to proceed *pro se*. [Id.].

The basis for Goetz's request was that Knoebler would not return phone calls, would not answer letters, and would not respond to his requests for information regarding the case. [Id.]. On June 28, 2004, Kenton County Circuit Court Judge, Hon. Leonard Kopowski, conducted a hearing concerning Goetz's motion for the appointment of new counsel. [Id.]. Judge Kopowski construed the letter as a motion for the appointment of new counsel, and overruled the motion.

26

[Id.].  Goetz continued to be represented by Knoebler throughout the remaining proceedings and trial. [Id.].

Goetz recognizes that a client who is indigent does not have a constitutional right to choose the attorney appointed to him/her by the court. Id. at 56 (citing Colpin, Drysdale, and Chartered v. U.S., 491 U.S. 617, 624 (1989).  Goetz also does not dispute that the Sixth Amendment does not guarantee that he will have a friendly relationship with his attorney. [Id.]. But, Goetz makes the argument that an indigent defendant is entitled to effective assistance during the preliminary hearing and pretrial stages of representation. Id. (citing Coleman v. Alabama, 399 U.S. 1, 7 (1970)).  Furthermore, all the rules of professional responsibility require that counsel engage in consultation with their client and exchange information when requested. [Id.].

Goetz feels that there must be some form of relationship between counsel and indigent defendant in order for there to be effective representation at trial. [Id. at 57].  Goetz claims that it would be very difficult for the constitutional principles set-forth in the Sixth Amendment to be achieved if counsel will not respond to his clients attempts at communication. [Id.].  Goetz claims that he had no relationship with Knoebler, and that he was forced to file *pro se* motions just to accomplish defense tasks that should have been routine practice for his counsel. [Id.]. Furthermore, Goetz explains that the failure of the relationship between he and his counsel was not just over minor points in strategy but involved the complete failure of counsel to prepare for trial. [Id.].

In reviewing the trial court's denial of the motion, the Kentucky Supreme Court noted that "a defendant is not entitled to the dismissal of his counsel and the appointment of substitute

27

counsel, except for adequate reasons or a clear abuse by counsel.  Goetz, 2007 WL 3225437 at

*9.  The Kentucky Supreme Court reviewed this claim for an abuse of discretion, because

whether good cause has been shown is within the discretion of the trial court.  Id.

    The Kentucky Supreme Court agreed that the allegations that were made by Goetz about

the conduct of his attorney would have been serious enough to require new counsel if they had

been substantiated.  Id.   The Kentucky Supreme Court further found that while it was clear that

a hearing was in fact held, the proceeding was not videotaped and the Court could not review

what transpired at the hearing.  Id.  The state court has long held that, when the complete record

is not before the appellate court, that the court must assume that the omitted record supports the

decision of the trial court.  Id. (citing Commonwealth v. Thompson, 697 S.W.2d 143, 145 (Ky.

1985)).  The Kentucky Supreme court based its decision upon the fact that no further complaints

were made by Goetz regarding his counsel's performance.  Id.  The Kentucky Supreme Court

reasoned that because no further complaints were made, that Goetz and his attorney must have

resolved their problems during the hearing.  Id.  The Kentucky Supreme Court found nothing in

the record to indicate that there was cause necessitating substitution of counsel and was therefore

no abuse of discretion by the trial court.  Id.

    This ground for relief is based upon an evidentiary issue as Goetz was afforded one

hearing on the matter, and afterwards made no further complaints.  Goetz makes the argument

that this was prejudicial on the part of the trial court, but there is no evidence on the record to

substantiate this claim.  This is a claim that is based upon an evidentiary issue, and therefore

should be left to the state court.  It does not appear to this Court that any actual Constitutional

issues are involved as Goetz was provided with counsel, he was given a hearing on his

complaints regarding that counsel, and afterwards made no further complaints.  Furthermore, this Court found it reasonable that all of Goetz's claims for ineffective assistance of counsel were found to be meritless and therefore he did not suffer prejudice by the trial court's denial of his motion for new counsel.

Under AEDPA, a federal court may grant a writ of habeas corpus if the adjudication of the state claim resulted in: (1) an unreasonable application of clearly established federal law; or (2) if the decision was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  The real issue underlying Goetz's claim in this situation is one of an evidentiary nature, and not a question of a violation of constitutional rights.  Federal habeas relief does not lie for errors of state law. . .[and] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions.  Estelle, 502 U.S. at 68.  Habeas relief is available only to decide if a state court conviction violates a petitioner's federal rights.  Id.

The Kentucky Supreme Court used an abuse of discretion standard when evaluating the decision of the trial court.  Goetz, 2007 WL 3225437 at *9.  In making an independent appraisal of the habeas petitioner's constitutional claim, a federal district court must sometimes defer to a state court's resolution of "issues of fact" underlying its determination.  Estelle, 459 U.S. at 1122.  The real issue underlying Goetz's claim in this situation is one of an evidentiary nature, and not a question of a violation of constitutional rights. Therefore, it is not an appropriate ground for relief to be brought before this Court.  Id.  It is for this reason that this Court relies on the Kentucky Supreme Court's finding that the trial court was not in error when it denied Goetz's motion to have his counsel removed.

<u>MOTION FOR AN EVIDENTIARY HEARING</u>

Goetz also filed a motion for an evidentiary hearing pursuant to 28 U.S.C. § 2254(e)(2).

[R. 10].  Pursuant to 28 U.S.C. § 2254(e)(2) an evidentiary hearing shall only be held if:

> (A) the claim relies on -
>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predication that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing  evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254 (e)(2).  These exceptions only apply if the applicant failed to develop the factual basis of a claim.  This condition is met only when the petitioner is at fault for failing to develop factual record in state court.  <u>Williams</u>, 529 U.S. 420.

Goetz argues that a federal court shall not hold an evidentiary hearing if the Petitioner has failed to develop the factual basis of the claim in state court. <u>Id.</u>  Goetz states that the key is whether or not the Petitioner has been diligent in his efforts to develop the record in state court, not whether the Petitioner has succeeded in developing the record. <u>Id.</u> (citing <u>James v. Brigano</u>, 470 F.3d 636, 642 (6th Cir.2006)).  Furthermore, if diligence is shown, a Petitioner is entitled to an evidentiary hearing if he alleges sufficient grounds for relief, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing on the matter. <u>Id.</u> (citing <u>Sawyer v. Hofbauer</u>, 299 F.3d 605, 610 (6th Cir. 2002)).

Goetz submits that he has had hearings in state court, but that the hearings have not been

"full and fair" hearings sufficient to create a complete record. [R. 10 at 2]. More specifically Goetz is concerned about the issue that was previously discussed with regard to his request to have his court appointed attorney dismissed. [Id.]. Goetz argues that because the evidentiary hearing regarding this issue at the state trial court level was off the record it was not full and fair. [Id.]. Goetz claims that an evidentiary hearing is needed on the issue to determine what actually transpired. [Id.].

It follows, that an evidentiary hearing is not required on issues that can be resolved by reference to the state court record. Schriro v. Landrigan, 550 U.S. 465, 474 (2007). Furthermore, an evidentiary hearing can be denied where the applicant's factual allegations are contrary to acts which are easily discernable from the record. Id. In the case at hand, the Kentucky Supreme Court based its denial of Goetz's claim on the fact that no further complaints were made by Goetz regarding his counsel after the initial hearing. Goetz, 2007 WL 3225437 at *9. This Court is therefore of the opinion that Goetz's actions spoke to the fact that his frustrations with his counsel had been resolved. It is for this reason that this Court denies Goetz's motion for an evidentiary hearing regarding this matter.

CONCLUSION

For the reasons set forth above, it is ORDERED that the Petitioner's Motions to Expand the Record [R. at 11] and for an Evidentiary Hearing [R. at 10] both be DENIED. Furthermore, it is RECOMMENDED that the Petitioner's request for relief under 28 § U.S.C. 2254 also be DENIED.

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Report and Recommendation. Specific objections to this Report and Recommendation must

be filed with in fourteen (14) days from the date of service thereof or further appeal is waived.

United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Thomas v. Arn, 728 F.2d 813, 815 (6th Cir. 1984).  General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal.  Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995).

Signed May 24, 2012



Signed By:

*Edward B. Atkins*

**United States Magistrate Judge**